UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| WILLIAM P. GRISE, AND MARY L. GRISE,<br><br>  Plaintiffs,<br><br>V.<br><br>RONALD T. ALLEN, et al.<br><br>  Defendants. | CIVIL ACTION NO. 5:11-195-KKC<br><br><br><u>OPINION AND ORDER</u> |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the Defendants' Renewed Motion for Summary Judgment. [DE 47]. For reasons stated in this Opinion, the Court will grant summary judgment on each of Dr. Grise's claims. However, the Defendants have not shown that summary judgment is appropriate on Mrs. Grise's claims for unlawful search under §1983, failure to train and supervise under § 1983, or negligent hiring, training, supervision, and retention. Therefore, the Court will grant the motion in part and deny it in part.

### I.  BACKGROUND

The Defendants dispute many of the facts alleged by the Plaintiffs.[1] For purposes of considering the current motion, the Court will consider the facts as stated by the Plaintiffs. *United States v. Diebold, Inc.*, 369 U.S. 654 (1962) ("On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.").

---

[1] For the Defendants' account of the events, see [DE 47-1 at 3, n.3.]

On January 2, 2011, Ronald T. Allen, a Deputy Sheriff of Madison County ("Deputy Allen") arrested William P. Grise, M.D. ("Dr. Grise") at his rural home in Madison County. [DE 51 at 5.] That evening, Dr. Grise fired two shotgun shells into the ground in an attempt to quiet a neighbor's barking dog. [DE 51 at 2.] Deputy Allen drove to Dr. Grise's home in response to a 911 call reporting the gun shots. [DE 47-1 at 2.] Dr. Grise maintains that he feared that he and his wife were in danger as Deputy Allen arrived because he was unsure of who was approaching their home. [DE 51 at 3.] Not knowing what to expect, Dr. Grise put a pistol in his jacket pocket for protection and walked outside his house. [DE 51 at 3.]

According to Dr. Grise's account, Deputy Allen exited his car and asked Dr. Grise if he fired the shots. [DE 51 at 3.] Dr. Grise admitted that he fired his shotgun on his own property hoping to silence the dog, then turned to walk back inside his house. [DE 51 at 3.] Deputy Allen asked Dr. Grise if he could enter the home, but Dr. Grise refused. [DE 51 at 3.] Deputy Allen then yelled at Dr. Grise to come outside, and Dr. Grise replied, "I have broken no law." [DE 51 at 3.]

Dr. Grise returned to his house. [DE 51 at 4.] His wife, Mary Grise ("Mrs. Grise"), who is also named as a plaintiff in this matter, was standing behind the partly-opened front door. [DE 51 at 4.] As Dr. Grise attempted to turn sideways and slide past her, Mrs. Grise lost her balance and fell over. [DE 51 at 4.] Deputy Allen, apparently seeing Mrs. Grise on the floor, demanded that Dr. Grise open the front door. [DE 51 at 4.] Deputy Allen then grabbed Dr. Grise by the arm, pulled him from the home and down the front steps, and placed him under arrest. [DE 51 at 4.] Dr. Grise was charged with fourth-degree assault, carrying a concealed weapon, and public intoxication. [DE 51 at 5-6.] The Plaintiffs allege that Deputy Allen then entered and searched their home. [DE 4 at ¶¶ 29, 52-57.]

Dr. Grise's preliminary hearing was held before the Madison County District Court on March 14, 2011. Garrett T. Fowles, an assistant county attorney, agreed that the

Commonwealth would dismiss the charges against Dr. Grise if he would abide by certain conditions for one year. Mr. Fowles recited the first three conditions and told the Court of the Commonwealth's recommendation that the charges be dismissed. The following exchange then occurred:

| | | |
|---|---|---|
| COURT: | | … Mr. Grise, just stay in touch with your attorney. We'll review this matter on March 12, 2012. Okay? Thank you. |
| MR. FOWLES: | | Tom, this – oh, I'm sorry, Judge. |
| COURT: | | Yes. |
| MR. FOWLES: | | I forgot about one other condition. Dr. Grise will stipulate to probable cause for the arrest without question. |
| COURT: | | Show stip PC, continue to March 12, 2012, 9:00 a.m., to be dismissed if no further violations, no possession of firearms with the exception of the shotgun, and not to discharge a weapon on his property unless in self-defense. |
| DR. GRISE: | | Yes sir. |
| COURT: | | Okay. Thank you. That takes care of the matter. |

[DE 51-1, Exhibit 1, Madison District Court Transcript 03/14/2011 at 3-4.]

On June 6, 2011, the Plaintiffs initiated this lawsuit by filing the original complaint. [DE 1.] The Plaintiffs named Deputy Allen, Nelson O'Donnell, the Sheriff of Madison County ("Sheriff O'Donnell"), and the Madison County Sheriff's Department as defendants in the suit. *See* [DE 4, Amended Complaint.] The Defendants filed their initial Motion for Summary Judgment on February 7, 2012. [DE 13.] In his Response to the first motion for summary judgment, Dr. Grise asserted that he did not stipulate to probable cause before the Madison District Court. [DE 17.]

On March 12, 2012, Dr. Grise returned to the Madison District Court, as instructed by the court at his preliminary hearing. Dr. Grise stated that he never orally stipulated to probable cause and would not do so. [DE 51 at 7.] The Madison District Court scheduled a

3

hearing for July 17, 2012, to determine whether Dr. Grise had stipulated to probable cause. [DE 51 at 8.] This Court stayed Dr. Grise's civil case pending the outcome of the July 17, 2012, hearing before the Madison District Court. [DE 31.]

Following the July 17, 2012, hearing, the Madison District Court concluded:

> Based upon the testimony of the Defendant and the copies of the transcripts submitted into the record, the Court finds that the Defendant with the assistance of counsel entered into an agreement to have his case dismissed on the condition of no further violations, no possession of firearms with the exception of a shotgun, not to discharge any weapons and the stipulation of probable cause.

[DE 47-4, Exhibit 3, Madison Circuit Court Certified Records, Madison District Court Order dated July 27, 2012, at 52.] Dr. Grise appealed this decision to the Madison County Circuit Court, which initially found that the District Court's order was not a final and appealable order. [DE 47-4, Exhibit 3 at 113.] In response, the Madison District Court entered a final order dismissing the criminal case against Dr. Grise. [DE 47-5, Exhibit 4, Madison District Court Certified Records, Madison District Court Order of Dismissal, at 13.] The Madison Circuit Court then considered the appeal and found that "the findings of fact of the District Court are supported by the record, and that the court correctly applied the law." [DE 47-4, Exhibit 3, Order of Madison Circuit Court, at 27-32.] The Kentucky Court of Appeals and Supreme Court of Kentucky both declined discretionary review. [DE 47-6, Exhibit 5; DE 47-7, Exhibit 6.]

Finally, the Defendants filed their current Renewed Motion for Summary Judgment seeking dismissal of all claims. [DE 47.] The Plaintiffs asserts the following eleven causes of action in this numerical order:

1. False arrest under 42 U.S.C. § 1983;
2. False arrest under Kentucky state law;
3. Malicious prosecution under 42 U.S.C. § 1983;
4. Malicious prosecution under Kentucky state law;
5. Abuse of criminal process under 42 U.S.C. § 1983;

4

     6. Abuse of criminal process under Kentucky state law;
     7. Unlawful search and invasion of privacy under 42 U.S.C. § 1983;
     8. Unlawful search and invasion of privacy under Kentucky state law;
     9. Failure to train and supervise under 42 U.S.C. § 1983;
     10. Negligent hiring, training, supervision, and retention; and
     11. Outrage under Kentucky state law.

The Defendants argue that Dr. Grise's stipulation to probable cause, coupled with other shortcomings in the Plaintiffs' claims entitles them to summary judgment on all counts. Dr. and Mrs. Grise argue that the stipulation does not bar their claims.

## II.   STANDARD OF REVIEW

"Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Mazur v. Young*, 507 F.3d 1013, 1016 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); Fed. R. Civ. P. 56(a).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.*

5

### III. ANALYSIS

#### A. Claims asserted by Mrs. Grise

As an initial matter, Mrs. Grise is named as a Plaintiff in this case. [DE 4 at 1.] It appears that Mrs. Grise intended to personally assert all eleven causes of action because each count of the Complaint alleges that she suffered an injury. *See* [DE 4.]

Neither party devoted substantial argument to Mrs. Grise's involvement in this matter. In their motion, the Defendants briefly mention that the "Amended Complaint … does not appear to contain any allegation that Deputy Allen violated Mrs. Grise's rights," but state that they "intended to also include Mrs. Grise to the extent that she is asserting claims." [DE 47-1 at 2, note 1.] Similarly, Plaintiffs treat the claims of Dr. Grise and Mrs. Grise as one and the same throughout their Response. *See* [DE 51.] At no point do Plaintiffs attempt to distinguish Mrs. Grise's claims from Dr. Grise's claims. Plaintiffs do not argue that Mrs. Grise's claims should proceed separately from Dr. Grise's claims in the event that his claims are dismissed.

Despite the lack of argument from the parties, the Court believes that Mrs. Grise lacks standing to sue on Counts One through Six because there is no allegation that the Defendants violated Mrs. Grise's rights. All of the alleged conduct related to those counts involved Dr. Grise, not Mrs. Grise. Furthermore, as explained herein, Count Eight cannot proceed as a separate cause of action under Kentucky law, *see infra* Section (C)(iii), and Count Eleven cannot be asserted in this case because other tort claims are available. *See infra* Section (C)(v).

However, Mrs. Grise may continue to pursue her claim for unlawful search and invasion of privacy under § 1983 because the Amended Complaint alleges a violation of her constitutional rights. [DE 4 at ¶ 54.] Dr. Grise's stipulation to probable cause does not prevent Mrs. Grise, who made no such stipulation, from arguing that there was no probable

6

cause for the search of her home. Since the unlawful search claim survives, summary judgment cannot be granted on Mrs. Grise's claims in Counts Nine and Ten.

The remainder of this Opinion discusses Dr. Grise's claims only.

### B. § 1983 Claims

  i. *Counts 1, 3, and 7: False Arrest, Malicious Prosecution, and Illegal Search*

In Counts One, Three, and Seven Dr. Grise asserts claims against the Madison County Sheriff's Department along with Deputy Allen and Sheriff O'Donnell in both their individual and official capacities.

  a) <u>Individual Liability of Deputy Allen and Sheriff O'Donnell</u>

Dr. Grise cannot establish the constitutional violations he alleges in these counts because he stipulated to probable cause. Therefore, Deputy Allen and Sheriff O'Donnell are entitled to qualified immunity in their individual capacities on the § 1983 false arrest, malicious prosecution, and illegal search claims.

Under § 1983, a plaintiff may seek money damages from government officials who have violated his or her constitutional rights, but to ensure that fear of liability will not unduly inhibit officials in the discharge of their duties, officials may claim qualified immunity so long as they have not violated a clearly established right, in which instance they are shielded from personal liability. *Camreta v. Greene*, 563 U.S. 692 (2011). The issue of qualified immunity is essentially a legal question for the court to resolve. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (citing *Elder v. Holloway,* 510 U.S. 510(1994); *Tucker v. City of Richmond,* 388 F.3d 216, 219 (6th Cir.2004)). The United States Supreme Court has mandated a two-step sequence for resolving government officials' qualified immunity claims. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). First, a court must decide whether the facts that the plaintiff has alleged make out a violation of a constitutional right. *Id.*

7

Second, if plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.*

In this case, Dr. Grise fails the first step. He cannot show that Deputy Allen or Sheriff O'Donnell violated his constitutional rights because he stipulated to probable cause.

To begin, Dr. Grise is collaterally estopped from contesting *whether* he stipulated to probable cause. Under the doctrine of collateral estoppel, also known as issue preclusion, "an earlier case only bars subsequent litigation over issues that (1) are the same as the issues now presented, (2) were actually litigated, (3) were actually decided, and (4) were necessary to the prior court's judgment. *Columbia Gas Transmission, LLC v. The Raven Co.*, 2014 WL 2711943, at *3 (E.D. Ky. June 13, 2014) (citing *Yeoman v. Com., Health Policy Bd.,* 983 S.W.2d 459, 465 (Ky. 1998)). Unlike claim preclusion, the parties need not be the same across both cases. *Id.*

Dr. Grise previously litigated the issue of whether he stipulated to probable cause before the Madison County District Court, which found that "the Defendant with the assistance of counsel entered into an agreement to have his case dismissed on . . . the stipulation of probable cause." [DE 47-4, Exhibit 3 at 52.] The Madison District Court eventually entered an order dismissing the criminal charges against him. [DE 47-5, Exhibit 4 at 13.] Dr. Grise appealed to the Madison County Circuit Court, which affirmed the District Court's findings. [DE 47-4, Exhibit 3 at 6.]

The Madison District Court's finding that Dr. Grise did in fact stipulate to probable cause collaterally estops him from contesting whether he stipulated to probable cause. First, the issue presented before the Madison District Court was exactly the same issue – whether Dr. Grise stipulated to probable cause. Second, the issue was actually litigated, evidenced by the fact that Dr. Grise himself testified before the Madison District Court regarding this very issue. [DE 51-3, Exhibit 3 at 14-16.] Third, the Madison District Court's

8

July 27, 2012, order shows that the court squarely decided the issue because it was the lone issue decided therein. [DE 47-4, Exhibit 3 at 52.] Finally, determination of the issue was necessary to the court's judgment because it was the sole issue presented in those proceedings and the dismissal of the charges against Dr. Grise was contingent, in part, upon his stipulation to probable cause. [DE 47-5, Exhibit 4 at 13.] Thus, Dr. Grise is collaterally estopped from re-litigating the question of whether he stipulated to probable cause.

Dr. Grise's false arrest, malicious prosecution, and illegal search claims fail based on the doctrine of judicial estoppel. "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *Watkins v. Bailey*, 484 F. App'x 18, 25 (6th Cir. 2012). In *Pennington v. Dollar Tree Stores, Inc.*, a court in this district held that a prior stipulation "in open court" that probable cause existed defeated the plaintiff's malicious prosecution and false imprisonment claims because, in light of the stipulation, the plaintiff was unable to prove a lack of probable cause. 104 F. Supp. 2d 710, 713 (E.D. Ky. 2000) *aff'd,* 28 F. App'x 482 (6th Cir. 2002). The *Pennington* court found that the stipulation constituted an admission by the plaintiff that probable cause existed for her detention, arrest, and criminal charges. *Id.* ("Plaintiff . . . admits to entering her stipulation in open court. Hence, she admits that probable cause existed . . . ."). Accordingly, the court granted summary judgment for the defendants.

Like in *Pennington*, Dr. Grise's stipulation was an admission that there was probable cause. The Madison District Court incorporated his admission into its final order of dismissal. Accordingly, Dr. Grise may not take a clearly inconsistent position in this case just because it works to his advantage. *See Watkins*, 484 F. App'x at 25.

9

Lack of probable cause is a required element of false arrest, malicious prosecution, and illegal search claims. *Fridley v. Horrighs,* 291 F.3d 867, 872 (6th Cir.2002) ("A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff."); *Fox v. DeSoto,* 489 F.3d 227, 237 (6th Cir. 2007) ("What is certain, however, is that [a malicious prosecution claim] fails when there was probable cause to prosecute. . . ."); *Voyticky v. Vill. of Timberlake, Ohio,* 412 F.3d 669, 678 (6th Cir. 2005) ("The Fourth Amendment to the United States Constitution prohibits searches and seizures absent probable cause or a warrant based on probable cause."). Dr. Grise is unable to establish a material element of these claims due to his prior stipulation to probable cause. As such, Dr. Grise cannot succeed on these claims.

Dr. Grise attempts to distinguish *Pennington* by asserting that the court in that case relied on a written stipulation of probable cause rather than an oral stipulation. [DE 51 at 24.] A close reading of *Pennington*, however, shows that Dr. Grise's argument is inaccurate. In *Pennington*, Judge Hood noted that "[t]he Court need not resolve the application of the [written] stipulation to the defendants at this time. Plaintiff in her response to the motion for summary judgment, admits to entering her stipulation in open court. Hence she admits that probable cause existed for the stop by the store manager, the arrest outside the mall, and the charges that followed. Plaintiff is therefore unable to meet the element of probable cause which is required to avoid summary judgment on her claim of malicious prosecution." 104 F. Supp. 2d at 713. Thus, the *Pennington* court did not rely on the written stipulation whatsoever, but rather based its decision on the oral stipulation made "in open court". Dr. Grise likewise stipulated that probable cause existed "in open court" before the Madison District Court on March 14, 2011, so *Pennington* is not distinguished for the reason he asserts.

In conclusion, Dr. Grise's false arrest, malicious prosecution, and illegal search claims are grounded in alleged constitutional violations. Since no constitutional violation occurred, Deputy Allen and Sheriff O'Donnell are entitled to qualified immunity and cannot be held liable in their individual capacities on Counts One, Three, or Seven.

  b) <u>Liability of Madison County</u>

Dr. Grise also asserts these claims against Deputy Allen and Sheriff O'Donnell in their official capacities, and against the Madison County Sheriff's Department.

The official capacity claims against Deputy Allen and Sheriff O'Donnell are considered claims against Madison County. "[A] section 1983 action against a city official in his or her official capacity is treated as an action against the City entity itself." *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003) (citing *Barber v. City of Salem,* 953 F.2d 232, 237 (6th Cir.1992)); *see also Kentucky v. Graham*, 473 U.S. 159 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

According to the Sixth Circuit, a plaintiff's claim against a municipality is "inextricably linked" to its claims against the individual defendants. *Cooper v. County of Washtenaw*, 222 Fed. App'x 459, 473 (6th Cir. 2007). For municipal liability to exist, a constitutional violation must take place. *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986). If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983. *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001).

Because this court has determined that Deputy Allen and Sheriff O'Donnell are entitled to summary judgment on Counts One, Three, and Seven for lack of a constitutional violation, Madison County cannot be liable on these claims.

### ii. Count 5: Abuse of Process

In Count Five Dr. Grise asserts abuse of criminal process under 42 U.S.C. § 1983. Recent Sixth Circuit precedent provides that a plaintiff's "alleged federal abuse-of-process claim can be easily disposed of, as this court has consistently declined to recognize an abuse-of-process claim under 42 U.S.C. § 1983." *Moore v. WesBanco Bank, Inc.,* 612 F. App'x 816, 823 (6th Cir. 2015) (citing *Rapp v. Dutcher*, 557 F. App'x 444, 448 (6th Cir. 2014)). Indeed, the Court affirmed a district court's dismissal of a plaintiff's federal abuse of process claim for this very reason. *Moore*, 612 F. App'x at 823; *Rapp*, 557 F. App'x 448 ("[T]he district court properly dismissed the claim because a federal abuse of process claim does not exist in the law of this circuit.")

Since the Sixth Circuit recently refused to recognize an abuse of process claim under federal law, this Court cannot allow Dr. Grise to assert that precise claim under § 1983 as a "close cousin" of malicious prosecution. To do so would run directly against clear Sixth Circuit precedent. Therefore, Count Five must be dismissed.

Even if abuse of process was a cognizable claim under § 1983, the elements of the claim would mirror those of state law. *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 676-77 (6th Cir. 2005). Dr. Grise's abuse of process claim fails under Kentucky law, *see infra* Section (B)(ii), so it would also fail as a § 1983 claim.

### iii. Count 9: Failure to Train and Supervise

Neither Sheriff O'Donnell nor Madison County can be held liable for failure to train and supervise. As to Sheriff O'Donnell in his individual capacity, the Sixth Circuit has clearly stated that "a prerequisite to supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor." *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006). In other words, if the subordinate did not violate a plaintiff's constitutional rights, the supervisor cannot be held liable for a failure to train or supervise.

12

As discussed above, Dr. Grise cannot establish that Deputy Allen, the subordinate in this situation, violated his constitutional rights. Therefore, Count Nine, the supervisory liability claim against Sheriff O'Donnell, must fail.

Similarly, Madison County cannot be held liable on Count Nine. "If the individual defendants have violated no constitutional right, the municipality cannot be liable under 1983 for a failure to train." *Cooper*, 222 F.App'x at 473. Dr. Grise cannot establish a constitutional violation by Deputy Allen or Sheriff O'Donnell, so Madison County cannot be held liable under § 1983.

### C. State Law Claims

This Court recognizes that it has dismissed all of Dr. Grise's federal law claims. In this instance, the interests of judicial economy, convenience, fairness, and comity are best served by this Court retaining jurisdiction over the state law claims. *Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988). This case was originally filed approximately four and a half years ago, on June 16, 2011. The state law claims are nearly identical to the § 1983 claims, involve precisely the same set of facts, and do not present any novel issues of state law. The parties have fully argued both the federal and state law claims in their respective filings related to the present summary judgment motion. Lastly, this case was previously stayed pending the outcome of state court proceedings, *see* [DE 31; 33], yet neither party appears to have a strong desire to litigate in state court, as neither party requested that this Court relinquish jurisdiction over the state law claims in the event the federal claims were dismissed. Therefore, in its discretion, this Court will retain jurisdiction over the state law claims and consider them here.

> *i. Counts 2 and 4: False Arrest and Malicious Prosecution*

The false arrest and malicious prosecution claims fail under state law because Dr. Grise's stipulation prevents him from establishing a lack of probable cause, an essential element of each tort.

In *Broaddus v. Campbell*, 911 S.W.2d 281, 282 (Ky. Ct. App. 1995), the defendant stipulated to probable cause for the issuance of the indictment against him and his theft charges were dismissed. He then sued for malicious prosecution. *Id.* at 282. The court held that the stipulation warranted dismissal of his claim because it prevented him from establishing a lack of probable cause. *Id.* ("We find it axiomatic that where there is a specific finding of probable cause in the underlying criminal action, or where such a finding is made unnecessary by the defendant's agreement or acquiescence, a malicious prosecution action cannot be maintained.").

Under Kentucky law, Dr. Grise must prove lack of probable cause as an element of his false arrest and malicious prosecution claims. *Id.* at 283 (malicious prosecution); *Myers v. City of Louisville,* 590 S.W.2d 348, 349 (Ky. Ct. App. 1979) (false arrest). Given Dr. Grise's stipulation, he cannot establish that required element. Therefore, the Defendants are entitled to summary judgment on Counts Two and Four.

> *ii. Count 6: Abuse of Process*

Abuse of process is "the employment of legal process for some other purpose other than that which it was intended by the law to effect." *Raine v. Drasin*, 621 S.W.2d 895, 902 (Ky. 1981). To prevail on an abuse of process claim, a plaintiff must show that (1) the process was instituted by the defendant for some ulterior purpose, and (2) that the defendant performed a willful act in the use of the process not proper in the regular conduct of the proceeding. *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky. 1998).

14

In *Pennington v. Dollar Tree Stores, Inc.*, 104 F. Supp. 2d 710 (E.D. Ky. 2000) *aff'd,* 28 F. App'x 482 (6th Cir. 2002), a court in this District dismissed an abuse of process claim based on the plaintiff's probable cause stipulation. The plaintiff argued that the defendants made shoplifting allegations against her out of "spite, anger, hatred, and ill will." *Id*. at 714. The court rejected the abuse of process claim, holding that "[b]ecuase the Ashland police had probable cause to arrest Plaintiff for shoplifting, Plaintiff cannot claim that the shoplifting allegations were borne out of any hatred or ill will harbored by the defendants." *Id.* Thus, the plaintiff's stipulation that probable cause existed for her arrest precluded her from asserting that the defendants initiated the charges against her for some ulterior purpose.

In the present case, Dr. Grise asserts that Deputy Allen arrested Dr. Grise with the "ulterior purpose of protecting himself from embarrassment and disciplinary action." [DE 51 at 30.] In keeping with the reasoning and holding of *Pennington*, this Court likewise finds that Dr. Grise's stipulation that probable cause existed for his arrest defeats the claim that the arrest constituted an abuse of process.

Furthermore, the Supreme Court of Kentucky has explained that "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion even though with bad intentions." *Simpson*, 962 S.W.2d at 394. (citing W. Prosser, *Handbook of the Law of Torts*, Section 121 (4th ed. 1971)). The Court further described the type of conduct that satisfies the second element of the claim:

> Such conduct 'usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property on [sic] the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.'

*Id.* (citing W. Prosser, *Handbook of the Law of Torts,* Section 121 (4th ed. 1971)).

15

*Mullins v. Richards*, 705 S.W.2d 951 (Ky. Ct. App. 1986), illustrates the type of extra-judicial act needed to sustain an abuse of process claim. In Mullins, the plaintiff repaired the defendants' cars, but the defendants were unhappy with the quality of the work and the cost. *Id.* at 951-52. The defendants went before a grand jury and obtained two indictments against the plaintiff that charged him with theft by deception. *Id.* at 952. The defendants had no contact with the plaintiff between the date the indictments were returned and the plaintiff's criminal trial, which ended in a mistrial. *Id.* After his criminal trial, the plaintiff sued for abuse of process. *Id.* In affirming the trial court's dismissal of the abuse of process claim, the court noted the fatal absence of the second element, stating that "[a]lthough [defendants] may have had an ulterior purpose in securing the indictments against the [plaintiff], the record contains no evidence that [defendants] attempted to use the indictments against [plaintiff] outside the criminal proceeding." *Id.* Importantly, the court opined that "[i]f [defendants] had offered to drop the indictments in return for a release of their debts to [plaintiff], then [plaintiff] would have stated a cause of action on his claim for abuse of process." *Id.* But without evidence of such an act the abuse of process claim was untenable.

In this case, Deputy Allen did not misuse process, but merely initiated criminal proceedings against Dr. Grise. Deputy Allen performed a basic police function– an arrest. There is no evidence that he attempted to use the charges against Dr. Grise outside the criminal proceeding for personal gain. *Mullins*, 705 S.W.2d at 952. He did not use the threat of arrest to secure a monetary, proprietary, or other benefit from Dr. Grise, nor did he offer to release Dr. Grise or refrain from filing charges in return for a benefit. Even if Deputy Allen arrested Dr. Grise solely to protect himself from embarrassment and disciplinary action, and to satisfy "his personal desires to feel more powerful than ordinary

16

citizens or those to whom he must actually submit," [DE 51 at 30], those bad intentions alone cannot sustain an abuse of process claim. *Simpson*, 962 S.W.2d at 395 (". . . there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion even if we assume *arguendo* bad intentions."). No evidence suggests that Deputy Allen engaged in the type of extortion required for an abuse of process claim. Therefore, the Defendants are entitled to summary judgment on Count Six.

    *iii.*    Count 8: Illegal Search

In Count Eight, Dr. Grise asserts that the Defendants conducted an illegal search in violation of Kentucky law, specifically sections one, two, and ten of the Kentucky Constitution. [DE 4, Amended Complaint, ¶ 57.]

In *St. Luke Hospital, Inc. v. Straub*, 354 S.W.3d 529 (Ky. 2011), the Supreme Court of Kentucky considered whether an individual may bring a civil action for an alleged violation of a provision of the Kentucky Constitution. The Court held that there is no statutory cause of action for alleged constitutional violations in Kentucky. *Id.* at 531-32. It further declined to judicially create a new tort cause of action for violations of the Kentucky Constitution. *Id.*

Since Kentucky law does not recognize the cause of action Dr. Grise asserts in Count Eight, that claim must be dismissed.

    *iv.*    Count 10: Negligent Hiring, Training, Supervision, and Retention

In Count Ten, Dr. Grise asserts that the Madison County Sheriff's Department and Sheriff O'Donnell were negligent in hiring, training, supervising, and retaining Deputy Allen. Dr. Grise cannot succeed on this claim as a matter of law because he cannot prove that Deputy Allen committed a tort.

"There must be a finding of a tort to support liability and damages under a theory of negligent hiring/retention." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 730 (Ky.

17

2009). "In order for [an] employer to be held liable for negligent hiring [or] retention ... the employee must have committed a tort." *Id.* (citing *Mulhern v. City of Scottsdale*, 799 P.2d 15, 18 (Ariz. Ct. App. 1990); *see also Texas Skaggs, Inc. v. Joannides*, 372 So. 2d 985, 987 (Fla. Dist. Ct. App. 1979) ("[I]n order to impose liability on an employer for [negligent hiring, training, or retention], a plaintiff must first show that he was injured by the wrongful act of an employee.").

In this case, Dr. Grise's negligence claim is premised on a finding that Deputy Allen committed at least one of the alleged torts. For the reasons stated herein, Dr. Grise cannot prevail on any of his tort claims against Deputy Allen. Therefore, neither the Madison County Sheriff's Department nor Sheriff O'Donnell can be held liable for negligent hiring, retention, supervision, or retention.

  v. *Count 11: Outrage*

In Count Eleven Dr. Grise asserts a claim for outrage, which is Kentucky's version of intentional infliction of emotional distress. This claim fails for two reasons.

First, outrage is typically considered a "gap-filler" and is available where a more traditional tort would not provide an appropriate remedy. *Naselroad v. Mabry*, No. CIV.A. 5:14-389-DCR, 2015 WL 1412007, at *6 (E.D. Ky. Mar. 26, 2015) (citations omitted). Outrage is still a permissible claim when more traditional torts are available as long as the defendants solely intended to cause extreme emotional distress. *Id.* However, "where an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie." *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. Ct. App. 1993). "Recovery for emotional distress in those instances must be had under the appropriate traditional common law action." *Id*.

18

Here, Dr. Grise asserts outrage based on the same conduct that underlies his other ten other causes of action. [DE 4, Amended Complaint, ¶64.] ("[Defendants'] intentional and reckless conduct *described above* was extreme and outrageous and caused the Plaintiffs extreme and severe emotional distress."). That conduct, namely Deputy Allen's arrest of Dr. Grise, falls within the scope of the other traditional torts that he asserts – false arrest, malicious prosecution, abuse of criminal process, unlawful search, and negligence. Dr. Grise would have been able to recover for emotional distress under these torts had he succeeded on the claims. Moreover, Dr. Grise does not allege in either the Amended Complaint or Response that Deputy Allen's sole intent in arresting him was to cause extreme emotional distress. Therefore, Dr. Grise cannot maintain a separate cause of action for outrage under Kentucky law. *Rigazio,* 853 S.W.2d at 299.

Second, Dr. Grise's stipulation that his arrest was supported by probable cause means that the Defendants' actions cannot satisfy the elements of an outrage claim as a matter of law. *Pennington*, 104 F.Supp.2d at 715. ("[B]ecause Plaintiff agrees that probable cause existed . . . the defendants' actions do not qualify as 'harassment intended to cause extreme emotional distress.'")

## IV.   CONCLUSION

For the reasons stated above, Dr. Grise cannot prevail on any of his claims, meaning that the Defendants are entitled to judgment as a matter of law. Summary judgment is also proper on Mrs. Grise's claims in Counts One through Six, Eight, and Eleven. However, the Defendants have not shown that summary judgment is warranted on Mrs. Grise's claims in Counts Seven, Nine, and Ten.

Accordingly, the Court **HEREBY ORDERS** as follows:

1. The Defendant's Renewed Motion for Summary Judgment [DE 47] is **GRANTED** as to all claims asserted by Dr. Grise.

19

2. The Motion for Summary Judgment is **GRANTED** as to the claims asserted by Mrs. Grise in Counts One, Two, Three, Four, Five, Six, Eight, and Eleven. The Motion is **DENIED** as to the claims asserted by Mrs. Grise in Counts Seven, Nine, and Ten.

Dated March 30, 2016.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY