UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| WILLIAM P. GRISE, M.D., and MARY L. GRISE,<br><br>    Plaintiffs,<br><br>V.<br><br>RONALD T. ALLEN, et al.,<br><br>    Defendants. | CIVIL NO. 5:11-195-KKC<br><br><br>OPINION & ORDER |

*************

This matter is before the Court on Defendants' Second Renewed Motion for Summary Judgment (DE 62) and Plaintiff Mary Grise's Motion for Summary Judgment (DE 66). For the reasons stated on the record during the motion hearing (DE 74) held on January 31, 2017, and those that follow, Defendants' motion is **GRANTED** and Plaintiff's motion is **DENIED**.

I

The factual nature of this case was discussed in great depth at the motion hearing. The following is a brief recitation of those events vital to the current motions.

On January 2, 2011, Deputy Ronald Allen arrested Dr. William Grise at his home in Madison County. Deputy Allen responded to a 911 call reporting gun shots. When arriving on scene, he learned that Dr. Grise had fired two shotgun shells into the ground in an attempt to quiet a barking dog.

Deputy Allen testified that he then directed Dr. Grise back into the home. He further testified that he spoke to Mrs. Grise, who was standing in the open crack of the front door, to direct her husband back inside.

The parties disagree about what happened next. Deputy Allen testified that he saw Dr. Grise shove the front door on his way back into the home, knocking Mrs. Grise to the ground. Thinking he had witnessed an assault, Deputy Allen proceeded up to the house and demanded Dr. Grise open the door, and then proceeded to arrest him.

1

Mrs. Grise testified that Dr. Grise did not knock her over, but that she fell backward because she was already weak from her various medical ailments. She further testified that there was no way for Deputy Allen to see her fall because she fell behind the door.

What is not in dispute is that Deputy Allen, between the time he thought he saw Mrs. Grise fall and the time Dr. Grise was arrested, called for paramedics. Deputy Allen also arrested Dr. Grise near the front of the home, and testified that he asked Mrs. Grise if she needed help. Mrs. Grise denies that Deputy Allen talked to her. In either scenario, it is clear that Deputy Allen was aware that Mrs. Grise was on the ground because he called the EMS to treat Mrs. Grise. The only real dispute is what caused her to fall.

In any event, with Dr. Grise now securely in the police car, Deputy Allen went back to the front of the home, this time accompanied by EMS workers, who had arrived in the interim. Mrs. Grise had not moved from the time of her initial fall to the time Deputy Allen entered the home with the EMS. Deputy Allen "stepped over" Mrs. Grise to enter the home and proceeded to look around the living room and adjoining kitchen area while EMS tended to Mrs. Grise. He discovered an empty wine bottle on the kitchen table and two legally possessed firearms in plain view in the living room. Mrs. Grise refused to go to the hospital. Deputy Allen left the scene soon thereafter.

## II

Remaining in this care are three claims by Mrs. Grise: (i) unlawful search and invasion of privacy under 42 U.S.C. § 1983; (ii) failure to train and supervise under 42 U.S.C. § 1983; (iii) negligent hiring, training, supervision, and retention under Kentucky state law.

This case raises essentially two principal questions, the answers to which dispose of this case. First, whether Deputy Allen's warrantless entry into the Grise residence was justified by exigent circumstances—namely, the emergency aid doctrine—and, second, whether his subsequent search of the living room, dining room, and kitchen area constituted a justifiable protective sweep. Because Deputy Allen's initial entry and subsequent search were justified, there is no constitutional violation in this case, and Defendants are entitled to summary judgment on all remaining claims.

1. **Unlawful search and invasion of privacy under 42 U.S.C. § 1983.**

Deputy Allen in His Individual Capacity

*Exigent Circumstance*. Mrs. Grise argues that Deputy Allen's entry into her home with EMS paramedics violated her Fourth Amendment right against unreasonable searches and seizures.

Warrantless searches are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 589–90 (1980). The Sixth Circuit has identified four "exigent circumstances" that give rise to the warrant requirement exception: (1) hot pursuit of a fleeing felon; (2) imminent destruction of evidence; (3) the need to prevent a suspect's escape; or, (4) a risk of danger to the police or others. *United States v. Williams*, 354 F.3d 497, 503 (6th Cir. 2003). Applicable here is the fourth exception. "Officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *See Schreiber v. Moe*, 596 F.3d 323, 329-30 (6th Cir. 2010) (citing *Michigan v. Fisher*, 558 U.S. 45, 47 (2009).

Deputy Allen's decision to re-enter the home accompanied by paramedics was justified by exigent circumstances. Deputy Allen faced the following situation: He witnessed an elderly woman lying on the ground, who did not get up, in the middle of the night in January. He just arrested Dr. Grise for suspected assault. Even taking the facts in the light most favorable to Mrs. Grise, which assume that Mrs. Grise fell and was not pushed, it does not negate the exigency created by her fall. At bottom, then, Deputy Allen had an objectively reasonable basis for believing that Mrs. Grise was in imminent danger, and Deputy Allen's decision to accompany paramedics into the home to facilitate medical care was justified.

*Protective Sweep*. Mrs. Grise also challenges the need for the search of her home, arguing that even if the initial entry of the home was justified, Deputy Allen still needed justification to conduct the sweep of the living room, dining room, and kitchen area.

A "'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327 (1980). The police may conduct a protective sweep if there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 334. The Sixth Circuit has extended the protective sweep doctrine to contexts beyond the execution of an arrest warrant. See *United States v. Taylor*,

248 F. 3d 506 (6th Cir. 2001). For example, Sixth Circuit held in *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003) that the safety of paramedics and others could be considered in justifying a protective sweep. As the Sixth Circuit has explained, *Buie* described two different types of justifiable protective sweeps:

> The first type allows officers to "look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Buie*, 494 U.S. at 334. The second type of sweep goes "beyond" immediately adjoining areas but is confined to "such a protective sweep, aimed at protecting the arresting officers[.]" *Id.* at 334–35. The first type of sweep requires no probable cause or reasonable suspicion, while the second requires "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 334.

*United States v. Archibald*, 589 F.3d 289, 295 (6th Cir.2009).

Here, it was objectively reasonable for Deputy Allen to conduct a protective sweep and for him to do so without the need for probable cause or reasonable suspicion. Deputy Allen arrived on a report of gun shots in the middle of the night, he arrested Dr. Grise for assault, and he learned that Dr. Grise had a pistol on his person. Thus, the original shotgun was unaccounted for. Deputy Allen did not know if anyone else was in the home. He also suspected Dr. Grise to be intoxicated. With an elderly woman lying on the ground, it was not unreasonable to conduct a confined sweep to ensure the safety of the paramedics or Mrs. Grise.

Importantly, the area in which this search took place was confined and limited. It is undisputed that Deputy Allen never went into the back bedrooms or any area outside the immediate area where Mrs. Grise was treated by EMS paramedics. Instead, he saw two guns in plain view in the living room and noticed an empty bottle of wine in the kitchen. This is not a case where the officers went to another floor of the residence or through multiple doorways to search a room disconnected from the space where paramedics were treating someone. The sweep was appropriately limited to areas contiguous to the room where Mrs. Grise and the paramedics were located. The DVD submitted by the parties confirms this; the living room is directly adjoining to the dining and kitchen area. This is exactly the type of sweep that *Buie* allows without requiring any probable cause or reasonable suspicion. Therefore, Deputy Allen's subsequent sweep is justified.

Accordingly, Mrs. Grise's claims for unlawful entry must fail as a matter of law, and, because there was no constitutional violation, Deputy Allen is immune from suit and entitled to qualified immunity.

<u>Sheriff O'Donnell in His Individual Capacity</u>

Mrs. Grise's claim against Sherriff O'Donnell in his individual capacity is dismissed, and Sherriff O'Donnell is entitled to qualified immunity because no constitutional violation occurred.

<u>Municipal Liability Claims</u>

Mrs. Grise's municipal liability claims against Defendants in their official capacity fail as a matter of law and will be dismissed. There was no underlying unconstitutional conduct on which to base municipal liability. And, even more, Mrs. Grise does not establish that either Sherriff O'Donnell, in his official capacity, or the Madison County Sherriff's Office employed a "custom" of engaging in unlawful searches as required by *Monnell v. Department of Social Services*, 436 U.S. 658, 691 (1978).

**2. Failure to train and supervise under 42 U.S.C. § 1983 and negligent hiring, training, supervision, and retention under Kentucky state law claims**.

Mrs. Grise's remaining claims must fail as a matter of law.

If no constitutional violation by the individual defendant is established under § 1983, the municipal defendants cannot be held liable under § 1983. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001).

Similarly, Mrs. Grise's state law claim is dismissed. "There must be a finding of a tort to support liability and damages under a theory of negligent hiring/retention." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 730 (Ky. 2009). In this case, no tort occurred to serve as the foundation for a negligent hiring claim under either a direct liability or *respondeat superior* theory. Therefore, neither the Madison County Sheriff's Department nor Sheriff O'Donnell, in his individual or official capacity, can be held liable for negligent hiring, retention, supervision, or retention.

## III

Accordingly, it is **HEREBY ORDERED** as follows:

1. The Defendants' Second Renewed Motion for Summary Judgment (DE 62) is **GRANTED**.

2. The Plaintiff's Motion for Summary Judgment (DE 66) is **DENIED**.

3. A separate judgment shall issue.

Dated February 2, 2017.

*Karen K. Caldwell*
KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY